# Greiner to use *v.* Central Mutual Fire Insurance Company, Appellant.

*Insurance—Fire insurance—Application—Daily report—Evidence.*

In actions on policies of fire insurance against three insurance companies, tried together, where it appears that no application was attached to the policy of one of the companies, an agent of such company will not be permitted to refresh his memory from a daily report, where it appears that the daily report was taken from a lost memorandum of the answers of the insured, that the report did not in any way indicate the misrepresentations alleged by the agent in his testimony, and that the daily report differed from the applications attached to the other policies, made up from the same memorandum.

Argued Nov. 13, 1908. Appeal, No. 153, Oct. T., 1908, by defendant, from judgment of C. P. Lancaster Co., Aug. T., 1904, No. 149, on verdict for plaintiff in case of H. N. Greiner, now to use of The Elizabethtown National Bank, v. Central Mutual Fire Insurance Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit on a policy of fire insurance. Before LANDIS, P. J.

At the trial the defendant set up as a defense certain alleged misrepresentations as to the ownership of the property, and as to a previous fire.

When Joseph Krause, the secretary of the defendant company at the time the policy was issued, testified as to such misrepresentation and in order to refresh his memory a paper designated as a daily report was produced and presented to the witness as follows:

"Q. Witness shown paper marked 'C. I. L. No. 32' and asked whether or not that is the paper on which he reduced Greiner's answer to writing."

Mr. Hensel: Objected to as immaterial.

The Court: That is disallowed because if that is so then it is an application and is not attached to the policy.

Defendant excepts. Bill of exceptions signed and sealed.

The paper "C. I. L. No. 32" is as follows:

"Daily Report from Elizabethtown, Pa., Agency: Policy No. 290291. Owner of Property. H. N. Greiner. Cancelled.

" TO

" CENTRAL MUTUAL FIRE INSURANCE COMPANY

"Principal office at No. 220, North Duke Street, Lancaster, Pa.

"Residence of insured, Elizabethtown, Pa.

"Commencement of Risk, February 4, 1904.

"Term, Expiration, Perpetual.

"Amount insured, $1000.

"Rate.

"Amount of Premium, $3.00.

"Report every policy, Renewal, Certificate, Endorsement or "Entry, on the date it is made.

"In the Sum of One Thousand Dollars as follows:

"$900. On fixed and movable machinery and parts thereof, shafting, belting, pulleys and hangers, tools, implements, sewing machines, fixtures and furniture, and office furniture.

"$100. On stock of shirts, trimmings, boxes, materials and supplies.

"All while contained in two-story frame shingle roof building with basement and brick engine and boiler-house attached, occupied for shirt factory.

"Situated on north side of Bainbridge Street, Elizabethtown, Pa. Other concurrent insurance permitted.

"Fire February 25, 1904.

" AGENTS WILL PLEASE ANSWER ALL THESE QUESTIONS.

"1. Material of building? Frame. Of roof? Shingle.

"2. When built? A few years. Is it in good repair? Good repair.

"3. How many stories high? Two story and basement.

"4. Heating and lighting? Steam heat, electric light.

"5. Size? .... x ....

"6. Does it stand on leased land? No. When will lease expire?

"7. Are stoves, pipes, flues and chimneys secure? Yes.

"8. Have you personally inspected the risk?....When?....

"9. How far is risk from agency? In agency.

"10. What is the present cash value of building?

"11. What is the present cash value of stock?

"12. Is the property encumbered? If so, how? Amount?

"13. How long has the assured resided in your place? A number of years.

"14. Is assured doing a profitable business? Yes.

"15. Does the assured keep merchandise and cash account?

"16. Do you fully recommend both risk and assured? Yes.

"Occupancy: Basement, first story, second story, third story, fourth story. Shirt factory.

"Other insurance, State Companies, amount and rates, and if concurrent: $1500, Lawn; $1200, Safety; $1000, Commercial.

"This Company has on or in the same building.
"Pol. No.....for $....    Pol. No.....for $....    And at risk within 100 feet.   Pol. No.....for $....    Pol. No.....for $.... Pol. No.....for $....

"EXPOSURES WITHIN A RADIUS OF 100 FEET.

"North. South. East. West. Vacant.

"Please make diagram stating character and purpose of buildings within radius of 500 feet. Red for bricks or stone. Blue for frames.

"Jos. KRAUSE, Agent.

"DO NOT WRITE BELOW THIS LINE.

---

"At the foot, separated by a heavy black line, of the front or outside of the paper is the following obligation:

"Policy No. 290291.                 Feb. 4, 1904.

"For value received, and in consideration of a Policy of Insurance issued to me by the Central Mutual Fire Insurance Company, of even date I promise to pay to the said Company such sum or sums of money, and at such time or times as may be required by the Board of Directors for the purpose of paying losses and the necessary expenses of said Company, payable within thirty (30) days after notice at the Company's office at Lancaster, Pa., or to any authorized agent. If not paid at the

382 GREINER *v.* CENT. MUT. FIRE INS. CO., Appellant.

Statement of Facts—Opinion of the Court. [40 Pa. Superior Ct.

expiration of said notice, 10 per cent. may be added for costs of collection; or, at its option, the Company may declare the aforesaid Policy void without further notice to me.

"H. N. GREINER.

"Witness: H. F. SHULTZ."

Verdict and judgment for plaintiff for $1,173.25. Defendant appealed.

*Error assigned* was ruling on evidence, quoting the bill of exceptions.

*John A. Coyle,* of *Coyle & Keller,* for appellant.—If the witness had been allowed to examine his report, he could have answered the questions. Without that examination he was unable to answer it, and the material question, therefore, as to the insured's ownership of the building, was not submitted to nor considered by the jury, and the appellant, therefore, was not able to show the material misrepresentation which by the terms of the policy would have avoided it: Bobb v. Clemson, 12 S. & R. 328; First National Bank of DuBois City v. First National Bank of Williamsport, 114 Pa. 1; Gilmore v. Wilson, 53 Pa. 194; King v. Faber & Co., 51 Pa. 387; Dodge v. Bache, 57 Pa. 421.

*W. U. Hensel,* for appellee.

OPINION BY BEAVER, J., October 11, 1909:

The agent of the defendant company issued to the plaintiff a policy of this and two other insurance companies at the same time. The agent was called as a witness for the defendant company, and when the question, "What statements or representations, if any, did he [plaintiff] make as to the ownership of the property at the building in which the machinery and contents were located?" it was objected to, the plaintiff's counsel inquiring: "Q. Were those representations reduced to writing that you now speak of?" to which he replied, "His answers were reduced to writing," and to the further question, "Q. Were they reduced to writing for this company?" the witness said, "I must say the applications were taken for the three

companies at the same time and written down at the same time." The Court: "Q. Do you mean there was any answer written as an application for this policy in this particular company? A. As far as the application calls for."

The three cases were tried together, the facts in the present case differing to some extent from the other two cases, in which there were regular written applications for the insurance.

In this case it appears that the so-called daily report was made by the agent to the company, the representations therein contained being made by him from the answers which were embodied in the other cases in regular applications, the daily report and the applications being made up, as the witness said, from the same paper, which he destroyed. The witness was asked to refresh his recollection as to what the answers of the insured were to certain questions and this, upon objection by the plaintiff, was refused, which refusal constitutes the only assignment of error.

The offer was brought about in this way: "Q. Witness shown paper marked C. I. L. No. 32 and asked whether or not that is the paper on which he reduced Greiner's answers to writing. Objected to as immaterial. The Court: That is disallowed, because, if that is so, then it is an application and is not attached to the policy. (Defendant excepts. Bills of exceptions signed and sealed.)"

So far as we can gather from the questions asked the witness, the policy was proposed to be attacked upon two grounds: first, that the insured misrepresented the ownership of the building and that he made a false answer to the question as to whether or not he had ever had a fire previously to the time of the insurance. Although he was not allowed to refresh his recollection, he said, in answer to the question, "What, if anything, did he say with regard to the ownership of the building in which this machinery and contents were contained? A. He owned the building. Q. What did he say? A. At this time I couldn't recollect. It is four years ago. I couldn't recollect whether he said he owned the building or whether anybody else owned it, because at that time of taking the application I put the answer down to the question." Then occurs the offer to

have the witness refresh his recollection from the so-called daily report.

In reference to the question of a previous fire, this is what occurred: "Q. What, if anything, did he say with regard to his having had a fire before or not? Mr. Hensel: I object to that. The Court: That is disallowed. He can ask what he stated at the time. (Defendant excepts. Bill of exceptions signed and sealed.) Q. What did he say about a previous fire? Mr. Hensel: That is objected to as leading. The Court: That is leading. It is suggestive. You can state just exactly what took place there at that time. Q. Did you or not ask him anything with regard to his having had a previous fire? A. In answer to the question, have you had fire before, he said, 'No.' Q. Did you or not ask him that question and what was his answer? A. I asked him, did you have a fire before? and he said, 'No.'"

If these were the material questions concerning which the defendant wished information, the witness answered them both, although he qualifies the first by a statement of a lack of recollection. As to the previous fire, however, the answer is definite, emphatic and repeated.

The original paper called the daily report, marked "C. I. L. No. 32" is before us, and it is a significant fact that there is no allusion whatever therein, either as to the ownership of the property, except the question, "Does it stand on leased land?" and the answer, "No," or as to any interrogation or answer as to a previous fire. It is difficult to understand, therefore, how the witness could have refreshed his recollection from a paper which has no allusion specifically to either of the questions concerning which information was sought.

Whether the defendant seeks to avoid the provisions of the Act of May 11, 1881, P. L. 20, which provides: "That all life and fire insurance policies upon the lives or property of persons within this commonwealth, whether issued by companies organized under the laws of this state, or by foreign companies doing business therein, which contain any reference to the application of the insured or the constitution, by-laws or other rules of the company, either as forming part of the policy or contract between the parties thereto, or having any bearing on said con-

tract, shall contain or have attached to said policies, correct copies of the application, as signed by the applicant, and the by-laws referred to, and, unless so attached and accompanying the policy, no such application, constitution or by-laws shall be received in evidence, in any controversy between the parties to, or interested in, the said policy, nor shall such application or by-laws be considered a part of the policy or contract between such parties," by the use of this daily report instead of a regular application such as was made in each of the other cases, we cannot determine. The result, however, is the same, whether intended or not. The agent took from the plaintiff, on a paper which the agent himself prepared, based upon the verbal answers of the plaintiff, a statement of the facts necessary to secure insurance. From this paper, he, the agent, made two applications in two other companies, signed by the plaintiff, and from the same paper made answer himself to the defendant company in what was called a daily report. Nothing purporting to be a copy of the answers of the insured, as made through the agent in this report, appears in the policy. If the answers of the agent in regard to the defendant's representations were taken as an application for the insurance, and the plaintiff (the insured) was to be held to their truthfulness, this was, as the court held, in a sense, an application for insurance, and should have been copied in the policy. The defendant secured answers from the witness to the questions propounded, although the force of one of them was subsequently affected by his lack of specific recollection in regard thereto. There was no necessity, therefore, for the witness to refresh his recollection from the paper offered for that purpose and, as already stated, an examination of the paper and the copy of it in the assignment of error shows that he would have acquired no information which could have refreshed his recollection in regard to the specific inquiries made.

It is to be remarked further that the paper from which the witness was asked to refresh his recollection was not the paper containing the answers of the plaintiff in regard to the ownership of the property and a previous fire; indeed, it was not even a copy of the paper containing the answers to the questions which

the witness alleged he had propounded to the plaintiff and which were answered by him. Indeed, the original paper, from which the applications in the other two cases, which were tried with this, and from which the so-called daily report with which the witness was asked to refresh his recollection, were prepared, was destroyed, and a comparison of the daily report and the applications signed by the plaintiff shows that they differ from each other, the applications containing questions and answers which do not appear in the daily report, so that the latter was in no sense a copy of the paper which contained the memoranda upon which the applications in the other cases were based and which were alleged to be the basis of the daily report by which the witness was asked to refresh his recollection. Moreover, it does not appear when the daily report was made up from the contents of the original memorandum, which was destroyed. The witness's recollection was to be refreshed by a paper which was to be the standard by which it was to be tried, but by what standard was the so-called daily report to be tried? It had been destroyed, and there was no evidence before the court that the daily report was a correct representation of the facts contained therein. It seems to us, therefore, that by all the authorities, the so-called daily report, differing as it does materially in the information contained therein from that which is contained in the applications in the other cases, was too remote and uncertain to serve as a memorandum by which the witness could be allowed to refresh his recollection.

From every point of view, therefore, we cannot see how the defendant was in any way injured by the refusal of the court to allow the so-called daily report to be used by the witness, as proposed by the defendant. Even if we should hold that the reason given by the court for refusing the offer was not a good one, the fact, nevertheless, remains that the offer of the defendant was properly refused.

Judgment affirmed.